UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

**CIVIL ACTION NO. 14-205-DLB**

**CHRISTOPHER LEE MIDDLETON**                                     **PLAINTIFF**

**vs.**                     **<u>MEMORANDUM OPINION AND ORDER</u>**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                   **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 8, 2012, Plaintiff Christopher Lee Middleton protectively filed his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability as of September 1, 2008. (Tr. 202-10). Plaintiff's claim was denied initially and on reconsideration. (Tr. 151-54 and 161-63). On May 1, 2013, Administrative Law Judge Christopher Van Dyck conducted an administrative hearing at Plaintiff's request. (Tr. 97-121). ALJ Van Dyck ruled that Plaintiff was not entitled to benefits on June 7, 2013. (Tr. 80-96). This decision became the final decision of the Commissioner when the Appeals Council denied review on September 5, 2014. (Tr. 1-7).

On October 15, 2014, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review. (Docs. # 14 and 15).

## II.  DISCUSSION

### A.  *Overview of the Process*

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th

Cir. 1994).

### B. The ALJ's Determination

At Step 1, the ALJ found that Plaintiff did not engage in substantial gainful activity from his alleged onset date through his date last insured (September 1, 2008 through March 31, 2013). (Tr. 85). At Step 2, the ALJ determined that Plaintiff had the following severe impairments through the date last insured: (1) degenerative disc disease of the lumbar spine; (2) chronic headaches; (3) mood disorder; (4) depression; (5) post-traumatic stress disorder; and (6) history of polysubstance abuse, in remission. (*Id.*).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 87-88). Specifically, the ALJ found that Plaintiff's mental health problems did not meet the requirements of Listing 12.04 (affective disorders), Listing 12.06 (anxiety-related disorders) or Listing 12.08 (personality disorders). (*Id.*). In reaching this conclusion, the ALJ noted that Plaintiff handles many tasks associated with daily living, maintains adequate relationships with family members and has not experienced any episodes of decompensation of extended duration. (*Id.*).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 404.1567(c), except that "he must perform no more than frequent climbing, stooping, kneeling, crouching and crawling" and "[m]entally, any work must be limited to simple, routine tasks." (*Id.*). The ALJ further found that Plaintiff was unable to perform past relevant work as a company laborer or corrections officer. (Tr. 91).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 91-92). The ALJ based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (*Id.*). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find medium work as a kitchen helper (278,000 nationally/2,900 Kentucky), a packer (163,000 nationally, 2,200 Kentucky) or a production worker (194,000/3,700). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that he was not under a "disability," as defined by the Social Security Act. (*Id.*).

### C. *Plaintiff's Arguments*

Plaintiff advances two arguments on appeal. (Doc. # 14-1). First, Plaintiff argues that the ALJ failed to give appropriate weight to the opinion of a consultative physician. Second, Plaintiff complains that the ALJ erred in assessing his credibility. Each of these arguments will be addressed in turn.

**1. The ALJ did not err in weighing the opinion of Dr. Hoskins, a non-treating source.**

In social security disability cases, medical evidence may come from treating sources, non-treating sources and non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.*; *see also*

4

*Abney v. Astrue*, Civ. A. No. 5:07-394-KKC, 2008 WL 2074011, at *11 (E.D.K.Y. May 13, 2008) (stating that one meeting is insufficient to establish an ongoing treatment relationship). A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source has not examined the claimant but provided medical or other opinion evidence in the case. *Id.*

In deciding how much weight to give the opinion of a non-treating source, the ALJ must consider the length, frequency, nature and extent of the treatment relationship; evidence in support of the opinion; consistency of the opinion with evidence in the record; physician's specialization; and other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(1)-(6).

On February 11, 2013, Dr. Robert Hoskins performed a consultative examination on Plaintiff. (Tr. 1363-70). He opined as follows:

> MEDICAL ASSESSMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL):
>
> . . . .
>
> IV.  I did not recommend climbing or balancing due to a history of vertigo or near syncopal episodes. He was steady in the office. I do not recommend he stoop, crouch, or kneel more than rarely. He may be able to crawl rarely. I do not have any specific diagnosis on the neck, but he reports neck pain with various postures and to crawl requires extension of the neck. It also requires bending and standing to get in and out of that position which would likely exacerbate low back pain.
>
> V.  He has only mild or slight limitations in regard to fingering or handling with the left hand and for that reason, I marked NO. There are no specific upper extremity limitations in regard to reaching, but he does have a credible history of increased low back pain with activities that cause him to stoop or bend forward such as washing dishes. This type of posture often needed to handle and reach is particularly

> VI. stressful on the low back and I expect he will have some limitations in regard to reaching and handling due to low back pain but not necessarily upper extremities. Pushing and pulling will be limited due to low back pain and due to decreased grip strength on the left. Decreased grip strength on the left might limit lifting and carrying and such, but I do not consider that the limiting factor in regard to those activities.
>
> VI. I do not recommend working at heights or moving machinery due to history of vertigo and/or near syncopal episodes. I do not recommend him working at high temperatures due to sweating or increased concentration of the urine with increased formation of kidney stones. He did not have any specific respiratory limitations. I do not recommend vibration to the spinal cord.
>
> VII. I did not do any quantitative psychologic evaluation on the patient and will defer to the psychiatrist and psychologist that the patient has seen and is seeing. However, I expect he will have limitations in regard to interactions with his superiors and co-workers. I expect he will have limitations for learning, remembering and completing tasks.
>
> He will likely have absentee issues due to chronic and severe headaches and I would suggest that he have additional treatment in regard to headaches and kidney stones. It was quite clear that he will have absenteeism or tardiness or will need to leave work roughly eight times a month for severe headaches. I also expect him to be incapacitated with kidney stones for several days about twice a year. In addition, he has discomfort from kidney stones approximately 15 days a month which will likely limit concentration and productivity.

(Tr. 1366-67).

Plaintiff complains that the ALJ "failed to justify his rational [*sic*] for disregarding th[is] evidence." (Doc. # 14-1 at 11-12). The record belies this assertion. In rendering his RFC assessment, the ALJ explained that he was giving little weight to Dr. Hoskins' opinion due to the lack of evidence in support of the opinion and the lack of consistency of the opinion with evidence in the record. (Tr. 90). Specifically, the ALJ reasoned:

> Absent reliable assertions from the claimant, I must also discount the consultative opinion of Dr. Hoskins, who based his functional capacity assessment in large part upon the claimant's presentation of lumbar

6

> tenderness, pain and immobility in conjunction with a description of "chronic" and "severe" headaches with vertigo and even "near syncopal episodes." Objectively, Dr. Hoskins identified no abnormality in the extremities and no specific neurological deficit, including gait, balance and tandem walking, similar to the claimant's VA physicians. Therefore, I must assign little weight to the heightened, subjectively-based restrictions imposed by Dr. Hoskins – for example, Dr. Hoskins' suggestion of lifting no more than 20 pounds, even while the claimant himself had previously conceded the ability to lift up to 40 pounds.

(*Id.*). Because the ALJ explained how much weight he gave to the opinion of Dr. Hoskins, a non-treating source, and because he detailed his reasons for doing so in accordance with 20 C.F.R. § 404.1527(c), the Court finds no error in this portion of the ALJ's Step 4 analysis.

### 2. The ALJ did not err in assessing Plaintiff's credibility.

Although relevant to the RFC assessment, a claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical or mental impairments or disability. Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *2 (July 2, 1996). When evaluating a claimant's symptoms, the ALJ must determine whether there is an underlying medically determinable impairment that could be reasonably expected to produce the alleged symptoms. *Id.* Once that is established, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individuals' ability to do basic work activities." *Id.*

When the claimant's description of his or her symptoms is not supported by objective medical evidence, the ALJ must assess the credibility of the claimant's statements based on the entire case record, including medical and laboratory findings, claimant's statements, information provided by treating or examining physicians about how the symptoms affect the claimant, and any other relevant evidence. *Id.* The ALJ may also consider the

claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects off any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives for pain relief; any other measures used for pain management; and any other factors concerning the claimant's limitations due to symptoms. *Id.* at *3. Credibility determinations based solely on intangible or intuitive notions are impermissible. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

Plaintiff complains that the ALJ "improperly rejected [his] credibility . . . with regard to the extent of his psychological and physical conditions." (Doc. # 14-1 at 12). In the alternative, even if the ALJ had reason to question Plaintiff's credibility, Plaintiff maintains that the ALJ did not make those reasons apparent in his decision. Again, the record belies these assertions.

At Step 4, the ALJ found that the underlying physical or mental impairments could be reasonably expected to produce the claimant's pain or other symptoms. (Tr. 89). However, he observed that "the totality of the evidence fails to support the full extent" of Plaintiff's alleged physical limitations. (*Id.*). To illustrate this point, the ALJ provided several citations to medical evidence that was inconsistent with Plaintiff's testimony regarding his symptoms:

> [R]egarding his back and neck pain, his December 2011 lumbar MRI revealed only a "mild" disc bulge at the L4-5 disc level with "extremely shallow" protrusion producing no neurological impingement. The study was otherwise unremarkable. Concerning his headaches, the claimant's November 2010 MRI of the brain also remained within normal limits.

> Meanwhile, throughout his VA treatment history, the claimant exhibited steady gait and normal strength in his extremities in July 2011 followed full motor function, muscle tone and strength, sensation and reflexes during a June 2012 exam a year later. Combined with normal Hoffman's and Babinski signs, a negative Romberg test, and proper tandem and heel/toe walking, the records fail to establish any significant neurological deficit. To the contrary, the claimant's back and headache ailments continue to be held stable with a conservative course of treatment, meriting prescription pain medication and semi-annual outpatient follow-up as needed.
>
> Thus, in sifting through the extensive, somewhat repetitive medical history presented by the claimant, the great preponderance of treating-source medical reports undercuts the debilitating level of "constant," "intense" neck and back pain asserted by the claimant. His steady, conservative medical care also fails to reflect and casts significant doubt on his allegations of up to 15 or 20 "severe" headaches per month. The evidence wholly fails to justify a claimant that can stand and walk only 20 minutes without rest, or one that must "lay in bed" aside from getting up to eat or watch television.

(*Id.*).

The ALJ then proceeded to point out inconsistencies in Plaintiff's own testimony:

> Of course, the claimant's reluctant, inconsistent hearing testimony concerning his well-documented history of substance abuse further dampens any remaining credibility. He acknowledged addiction between 2005 and 2008 but claimed predominant sobriety thereafter, despite multiple hospital admissions for full blown drug abuse since June 2010. In fact, the VA records document recurrent malnutrition, psychosis, suicidal thoughts and impulsive spending.
>
> Indeed, I cannot ignore that the claimant reportedly spent money from his disability, unemployment benefits, and even from his G.I. bill on drugs. Moreover, aside from such discrepancy between his testimony and the medical records, the claimant acknowledges occasional use of marijuana or Lortab and occasional non-use of his prescribed psychotropic medication. Indeed, the claimant has admitted that he does not always take his psychological medications, and when he does, he feels better.

(*Id.*).

Based on its review of the record, the Court finds that the ALJ did not err in concluding that there were inconsistencies between the severity of Plaintiff's symptoms and

9

the objective medical evidence. Thus, the ALJ was required to assess Plaintiff's credibility. In making this assessment, the ALJ availed himself of the entire case record, as Social Security Ruling 96-7p instructs. He not only provided multiple examples of the inconsistencies between the objective medical evidence and Plaintiff's testimony, he also highlighted the inconsistencies in Plaintiff's own testimony. Finally, the ALJ incorporated the limitations that he found to be justified in assigning a medium RFC. Under these circumstances, the Court finds no error in this aspect of the ALJ's Step 4 analysis.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 14) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 15) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 17th day of March, 2016.



Signed By:
<u>David L. Bunning</u> DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\14-205 MOO re Middleton.wpd